﻿Citation Nr: 18132487
Decision Date: 09/06/18 Archive Date: 09/06/18

DOCKET NO. 14-34 862
DATE: September 6, 2018
REMANDED
Entitlement to service connection for a left shoulder disorder, to include as secondary to a service-connected cervical spine disability is remanded.
Entitlement to service connection for a left lower extremity disorder, to include as secondary to a service-connected disability is remanded.
Entitlement to service connection for hypertension, to include as secondary to a service-connected cervical spine disability is remanded.
Entitlement to service connection for erectile dysfunction, to include as secondary to a service-connected disability is remanded.
Entitlement to service connection for diabetes mellitus, type II, to include as secondary to a service-connected cervical spine disability is remanded.
Entitlement to a rating greater than 40 percent for a cervical spine disability is remanded.
REASONS FOR REMAND
The Veteran served on active duty from December 1990 to March 1991 and he had an earlier period of active duty for training (ACDUTRA) in the National Guard from December 1985 to April 1986.
This appeal to the Board of Veterans’ Appeals (Board) is from January 2013 and March 2014 rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO).
In November 2017, the Veteran testified during a video conference hearing before the undersigned; a transcript of the hearing is of record. Shortly after the hearing the Veteran’s attorney submitted additional records, which the AOJ will have an opportunity to review in light of the remand.
In March 2018, the Veteran requested additional time to submit evidence and then in June 2018 he reported he had no additional evidence to submit.
1. Entitlement to service connection for a left shoulder disorder, to include as secondary to a service-connected cervical spine disability is remanded.
The Veteran testified that he has had portions of his collarbone removed and VA treatment records show he reported having left shoulder surgery in the 1990’s. See March 2014 CAPRI records and Hearing Testimony. Although the Veteran reported being under VA medical care since he left service, there are very few VA treatment records in the file prior to November 2012 and those are related to the right shoulder and cervical spine; there is nothing concerning the left shoulder surgery. There are also no VA treatment records since September 2014. These outstanding records from the Oklahoma VA Medical Center (VAMC) must be associated with the file.
2. Entitlement to service connection for a left lower extremity disorder, to include as secondary to a service-connected disability is remanded.
The Veteran contends that his left lower extremity radiculopathy is related to his diabetes mellitus or Persian Gulf service. 
VA is authorized to compensate any Persian Gulf Veteran with a chronic disability resulting from an undiagnosed illness, or combination of undiagnosed illnesses, which became manifest either during active duty in the Southwest Asia theater of operations during the Persian Gulf War, or to a degree of 10 percent or more within a presumptive period following service in the Southwest Asia theater of operations during the Persian Gulf War. 38 U.S.C. 1117. 
To grant service connection for a claimed disability, a Persian Gulf Veteran must exhibit objective indications of a chronic disability resulting from an undiagnosed illness or a medically unexplained chronic multisymptom illness which became manifest either during active military, naval, or air service in the Southwest Asia Theater of Operations during the Persian Gulf War, or to a degree of 10 percent or more not later than December 31, 2021. The claimed disability must be characterized by symptomatology that by history, physical examination, and laboratory tests cannot be attributed to any known clinical diagnosis. 38 U.S.C. 1117 (2012); 38 C.F.R. 3.317 (2018).
Although his Form DD 214 shows he had some foreign service, his service personnel records are needed to confirm his presence in the Southwest Asia. 
The Veteran testified that he started having problems in 1991 or early 1992. In support of his claim is a February 2016 opinion from Dr. M. F. that the Veteran has polyneuropathy related to chemical exposure during his Persian Gulf service. C. C., a physician’s assistant, offered a similar opinion in March 2016. Somewhat vague is an October 2017 opinion from Dr. A. M. that the Veteran has aches and pains related to Persian Gulf service. See November 2017 Medical Treatment Records – Non-Government Facility. As none of these opinions include a rationale, they lack probative value. They are, however, sufficient to trigger the need to schedule a VA examination.
As previously noted, there are outstanding VA treatment records that must also be obtained since they may contain evidence pertinent to the claim.
3. Entitlement to service connection for hypertension, to include as secondary to a service-connected cervical spine disability is remanded.
Although the Veteran is not shown to have had a diagnosis of hypertension in service, his service treatment records contain two blood pressure readings that appear to be elevated. The Veteran’s service treatment records are incomplete and previous efforts to obtain the have shown they are lost and unavailable. 
The opinion from the physician’s assistant linked the Veteran’s current hypertension to his Persian Gulf service but without a rationale it does not have probative value. Since the Veteran had elevated blood pressure readings in service and a current diagnosis of hypertension, an examination and nexus opinion are needed.
The Board also notes that hypertension is a chronic disorder that may be granted service connection on a presumptive basis if manifested to a compensable degree within one year of separation from service. Since the available post service treatment record do not show when hypertension was first diagnosed, it is particularly important to obtain the outstanding treatment records to determine how long after service it was diagnosed. 
4. Entitlement to service connection for erectile dysfunction, to include as secondary to a service-connected disability is remanded.
Although the Veteran has a diagnosis of erectile dysfunction, the etiology of the disorder is unclear. A March 2014 VA examiner’s opinion is that the Veteran’s erectile dysfunction is less likely than not secondary to his cervical spine disability and includes a rationale. See March 2014 CAPRI records. The opinion from the physician’s assistant links it to Persian Gulf service but it is without a rationale, so it does not have probative value. Given that a November 2012 treatment record notes multiple causes for erectile dysfunction, some of which involve issues that are on appeal, these issues are intertwined. See September 2014 CAPRI records. Since the scope of the claim may be broader than first indicated, another opinion may be needed. The outstanding VA treatment records may also contain relevant information. 

5. Entitlement to service connection for diabetes mellitus, type II, to include as secondary to a service-connected cervical spine disability is remanded.
The Veteran’s diabetes mellitus, type II appears to have been first diagnosed in October 2012. See March 2014 CAPRI records. The February 2016 opinion from Dr. M. F. that links the Veteran’s diabetes mellitus to service is insufficient to grant the claim because it does not include a rationale. The March 2016 opinion from C. C. is insufficient for the same reason. However, the opinions are enough to trigger the need to schedule a VA examination and obtain a nexus opinion.
6. Entitlement to a rating greater than 40 percent for a cervical spine disability is remanded.
The Veteran has not had a VA examination for his cervical spine since October 2012. At that time, there was some limited range of motion, radicular symptoms in both upper extremities, and no incapacitating episodes. Since then, the disability appears to have worsened. CAPRI records show the Veteran has had an increase in bilateral upper extremity neurological symptoms.
The Veteran’s service-connected cervical spine disability includes radiculopathy in both upper extremities and it has been rated under a former version of rating criteria that combines the neurological and musculoskeletal manifestations in one rating. The current version of the regulations permit assigning separate ratings. The January 2013 rating decision September 2014 statement of the case (SOC) considered both versions of the rating criteria, but when discussing the current criteria did not consider the neurological manifestations. Since the neurological manifestations are part and parcel to the cervical spine disability and appear to have worsened, an examination for current findings is needed. 
The matters are REMANDED for the following action:
1. Obtain and associate Oklahoma City VAMC treatment records prior to November 2012 and since September 2014 with the claims file.
2. Obtain and associate with the claims file the Veteran’s service personnel records and determine whether he served in Southwest Asia. When scheduling the VA examinations, notify each clinician as to whether the Veteran’s service in Southwest Asia has been confirmed. 
3. After the above development is complete, schedule the Veteran for a VA examination to determine the nature and etiology of his left shoulder disorder. The clinician must have access to the claims file and review it. All tests and studies deemed necessary should be conducted and all pertinent findings reported in full. Obtain a complete history from the Veteran.
a) Based on the examination and review of the claims file, the clinician should address the following:
• Identify and diagnose any left shoulder disorder present on examination or noted in treatment records.
• Is any diagnosed left shoulder disorder at least as likely as not (50 percent or greater probability) related to service, to include his reports of wear and tear as a medic?
• Is any diagnosed left shoulder at least as likely as not caused by the cervical spine disability?
• Is it at least as likely as not that a left shoulder disorder was permanently worsened beyond normal progression (aggravated) by the Veteran’s cervical spine disability? If so, identify the baseline level of the disability that existed before it was aggravated by the service-connected disability.
• If the Veteran’s service in Southwest Asia has been confirmed then determine if there are any manifestations of a left shoulder disorder that cannot be attributed to a known diagnosis. If so, opine whether it is at least as likely as not that these symptoms are due to an undiagnosed illness or medically unexplained chronic multi-symptom illness, to include fibromyalgia, resulting from service in Southwest Asia during the Persian Gulf War. If so, the examiner should also comment on the severity of symptomatology and report all signs and symptoms necessary for evaluating the illness under the rating criteria.
b) A clear rationale for all opinions must be provided, and a discussion of the facts and medical principles involved would be of considerable assistance to the Board. The clinician is advised that all but a few of the Veteran’s service treatment records are missing. If the examiner is unable to render an opinion, he/she should so state with supporting rationale.
4. After development in steps 1 and 2 are completed, schedule the Veteran for a VA examination to determine the nature and etiology of his left lower extremity radiculopathy. The clinician must have access to the claims file and review it. All tests and studies deemed necessary should be conducted and all pertinent findings reported in full. Obtain a complete history from the Veteran.
a) Based on the examination and review of the claims file, the clinician should address the following:
• Is the Veteran’s left lower radiculopathy at least as likely as not (50 percent or greater probability) related to service, to include his reports of wear and tear as a medic?
• If the Veteran’s service in Southwest Asia has been confirmed then determine if there are any manifestations of the left lower extremity that cannot be attributed to a known diagnosis. If so, opine whether it is at least as likely as not that these symptoms are due to an undiagnosed illness or medically unexplained chronic multi-symptom illness, to include fibromyalgia, resulting from service in Southwest Asia during the Persian Gulf War. If so, the examiner should also comment on the severity of symptomatology and report all signs and symptoms necessary for evaluating the illness under the rating criteria.
b) A clear rationale for all opinions must be provided, and a discussion of the facts and medical principles involved would be of considerable assistance to the Board. The clinician is advised that all but a few of the Veteran’s service treatment records are missing. If the examiner is unable to render an opinion, he/she should so state with supporting rationale.
5. After development in steps 1 and 2 are completed, schedule the Veteran for a VA examination to determine the nature and etiology of his hypertension. The clinician must have access to the claims file and review it. All tests and studies deemed necessary should be conducted and all pertinent findings reported in full. Obtain a complete history from the Veteran.
a) Based on the examination and review of the claims file, the clinician should address the following:
• Did the Veteran’s hypertension at least as likely as not (50 percent or greater probability) have its onset during service or is otherwise related to service, to include his Persian Gulf service and the two elevated blood pressure readings noted in 1991 prior to separation?
• Did the hypertension at least as likely as not manifest within one year of separation from service?
• If the hypertension is related to service or a service-connected disability, did it at least as likely as not cause the Veteran’s erectile dysfunction, to include as the result of medication taken to treat hypertension?
• If the hypertension is related to service or a service-connected disability, did it at least as likely as not permanently worsen beyond normal progression (aggravated) the Veteran’s erectile dysfunction? If so, identify the baseline level of the disability that existed before it was aggravated by the service-connected disability.
b) A clear rationale for all opinions must be provided, and a discussion of the facts and medical principles involved would be of considerable assistance to the Board. The clinician is advised that all but a few of the Veteran’s service treatment records are missing. If the examiner is unable to render an opinion, he/she should so state with supporting rationale.
6. After development in steps 1 and 2 are completed, arrange for a VA clinician to review the claims file to determine the nature and etiology of the Veteran’s erectile dysfunction. 
a) Based on a review of the claims file, the clinician should address the following:
• Is the Veteran’s erectile dysfunction at least as likely as not (50 percent or greater probability) related to service, to include his time in Southwest Asia?
• Is the diagnosed erectile dysfunction at least as likely as not caused by the cervical spine disability, to include any medication taken to treat the cervical spine?
• Is it at least as likely as not that the erectile dysfunction was permanently worsened beyond normal progression (aggravated) by the Veteran’s cervical spine disability? If so, identify the baseline level of the disability that existed before it was aggravated by the service-connected disability.
b) A clear rationale for all opinions must be provided, and a discussion of the facts and medical principles involved would be of considerable assistance to the Board. The clinician is advised that all but a few of the Veteran’s service treatment records are missing. If the examiner is unable to render an opinion, he/she should so state with supporting rationale.
7. After development in steps 1 and 2 are completed, schedule the Veteran for a VA examination to determine the nature and etiology of his diabetes mellitus, type II. The clinician must have access to the claims file and review it. All tests and studies deemed necessary should be conducted and all pertinent findings reported in full. Obtain a complete history from the Veteran.
a) Based on the examination and review of the claims file, the clinician should address the following:
• Is the Veteran’s diabetes mellitus at least as likely as not (50 percent or greater probability) related to service to include his time in Southwest Asia?
• If the diabetes mellitus is related to service or a service-connected disability, did it at least as likely as not cause the Veteran’s erectile dysfunction or left lower extremity neuropathy?
• If the diabetes mellitus is related to service or a service-connected disability, did it at least as likely as not permanently worsen beyond normal progression (aggravated) the Veteran’s erectile dysfunction or left lower extremity neuropathy? If so, identify the baseline level of the disability that existed before it was aggravated by the service-connected disability.
b) A clear rationale for all opinions must be provided, and a discussion of the facts and medical principles involved would be of considerable assistance to the Board. The clinician is advised that all but a few of the Veteran’s service treatment records are missing. If the examiner is unable to render an opinion, he/she should so state with supporting rationale.
8. After development in steps 1 and 2 are completed, schedule the Veteran for a VA examination to determine the severity of his cervical spine disability. The clinician must have access to the claims file to review. A complete history should be elicited from the Veteran, and any tests and studies deemed necessary by the examiner should be conducted. All findings should be reported in detail. The following should be included in the report:
a) Range of motion testing should be undertaken, to include after repetitive use. The examiner is to report the range of motion measurements in degrees. The examiner should consider whether there is likely to be additional range of motion loss due to any of the following: (1) during flare-ups; (2) after repetitive use over time; (3) in weight bearing and non-weight bearing; and (4) as a result of pain, weakness, fatigability, or incoordination.
b) The examiner should offer opinions with respect to the additional limitation of motion during flare-ups based on estimates derived from information procured from relevant sources, including the Veteran’s lay statements. It is insufficient to conclude that the requested opinion cannot be rendered without resorting to speculation based solely on the fact that the VA examinations were not performed during a flare-up.
c) The examiner should also address whether there is a difference in active range of motion versus passive range of motion. If so, the examiner is asked to describe the additional loss, in degrees, if possible. In any event, the examiner should fully describe the any associated functional limitations.
d) The examiner must, at a minimum, ask the Veteran to describe the severity, frequency, duration, and functional loss manifestations related to flare-ups, to include whether there have been any changes since the last examination.
e) If the examiner is unable to render the requested opinions without resorting to speculation, he or she must so state. However, a complete explanation for such a finding must be provided, such as whether there is inadequate factual information, whether the question falls within the limits of current medical knowledge or scientific development, whether the cause of the condition in question is truly unknowable, and/or whether the question is so outside the norm of practice that it is impossible for the examiner to use his or her medical expertise and training to render an opinion.
f) The clinician must also assess and describe the severity of the bilateral upper extremity neuropathy associated with the cervical spine disability. Subjective complaints and objective findings should be fully reported and include testing of muscle strength, reflexes, and sensory.

 
S. HENEKS
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD D. Bredehorst